887 F.2d 265
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cheryl L. ADKISON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-1200.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1989.
 
 Before KEITH, MILBURN and ALAN E. NORRIS, Circuit Judges.
 
 
 1
 PER CURIAM. Plaintiff-appellant Cheryl L. Adkison ("Adkison") appeals the summary judgment awarded by the district court affirming the decision of the Secretary of Health and Human Services ("Secretary") to deny her claim for disability insurance benefits. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Adkison filed her first application for disability insurance benefits on March 11, 1983. She alleged a disability due to vascular migraine headaches with episodes of status migrainous and an onset date of December 1980. The first application was denied on November 22, 1983, by an administrative law judge ("ALJ") who determined that Adkison was able to perform her past relevant work. Adkison ultimately appealed the decision to this court, which affirmed the district court's holding that substantial evidence supported the ALJ's decision.
 
 
 3
 Adkison initiated the present claim on May 2, 1986, by filing her second application for disability insurance benefits. Adkison alleged the same disability and the same onset date as alleged in her first application. The present application was denied initially, upon reconsideration, and by an ALJ after a hearing on September 9, 1987. The ALJ declined to reopen the November 22, 1983, decision denying Adkison's first application for disability insurance benefits. The ALJ determined that res judicata dictated that the present application be restricted to the period beginning November 23, 1983, and ending March 31, 1984, the date Adkison's insured status expired. The ALJ concluded that Adkison had the residual functional capacity, prior to March 31, 1984, to perform her past relevant work.
 
 
 4
 Adkison commenced the present action in the district court, seeking review of the Secretary's decision. The district court concluded that substantial evidence supported the Secretary's decision, and granted the Secretary's motion for summary judgment. This timely appeal followed.
 
 B.
 
 5
 Adkison was born on June 30, 1953, and was thirty-four years old on the date of the Secretary's final decision. She is a high school graduate, and her past relevant work was that of a secretary and a license bureau counter clerk. She has performed no substantial gainful activity since December 31, 1980, the onset date of her alleged disability.
 
 
 6
 Adkison testified at the hearing that she seeks disability status on the basis of migraine headache pain. She described her headaches as constant, but varying in intensity. A review of the medical evidence reveals that Adkison has a history of headache pain and failure to achieve relief with the usual drug treatments. Because the instant application is restricted to the period beginning November 23, 1983, and ending March 31, 1984, it is necessary to consider only the evidence relevant to this limited time period.
 
 
 7
 In December 1982, Dr. Seymour Diamond, of the Diamond Headache Clinic in Chicago, diagnosed Adkison as suffering from nonclassical migraine with episodes of status migrainous. Adkison was hospitalized for headache pain twice during 1983 prior to November. On both occasions, Adkison was treated with medication and discharged in improved condition. During 1983, Adkison continued to receive treatment through the Diamond Headache Clinic.
 
 
 8
 In early November 1983, much of Adkison's headache medication was ceased in preparation for scheduled gynecological surgery. The surgery was performed in late November with no complications, and Adkison was discharged in stable condition under the care of her family physician, Dr. Carl P. Brandt. In a letter dated January 26, 1984, Dr. Brandt stated that since her surgery, Adkison had some improvement in her headaches as she was off most of the medications from the Diamond Clinic, but that she was still having intractable headaches requiring shots at home. Dr. Brandt opined that Adkison was not able to return to any full-time work at that time.
 
 
 9
 On February 21, 1984, Adkison complained of headache pain, and she was prescribed medication by Dr. Diamond. On March 5, 1984, she complained of a left-side migraine headache, but by March 9, she indicated her condition was better. And on April 10, 1984, Dr. Diamond recorded that Adkison was "doing real well. HA's [headaches] less severe." Adkison did not complain of headache pain again until June 28, 1984. However, Adkison did require treatment with increasing frequency during the latter part of 1984.
 
 
 10
 Adkison testified before the ALJ that she was familiar with computers and word processors and had sufficient ability to sit, stand, and lift to return to her past work. Nevertheless, she stated she was unable to work because of continuous headaches that might last for three or four weeks at a time. Adkison testified the headaches were constant, but varied in their degree of severity. She stated her condition was exacerbated by such activities as driving, or turning or shaking her head, and she drove only short distances. She stated her activities were very limited, and she did a limited number of household chores, working at her own pace. Adkison testified she had memory problems due to the effects of her medication. She stated she had difficulty concentrating, but she was oriented to time and place and she could concentrate well enough to follow a movie on television, even if she had a headache. The principal issue presented in this appeal is whether substantial evidence supports the Secretary's decision that Adkison was not disabled between November 23, 1983, and March 31, 1984.
 
 II.
 
 11
 When reviewing the granting or denial of Social Security benefits, the inquiry is whether the Secretary's findings are supported by substantial evidence and whether the Secretary correctly applied the law. Mullis v. Bowen, 861 F.2d 991, 992-93 (6th Cir.1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The reviewing court "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The reviewing court must examine the record taken as a whole, Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 852 (6th Cir.1986), and the fact that the record may also contain substantial evidence to support a conclusion different from that reached by the Secretary is irrelevant. Crisp v. Secretary of Health & Human Services, 790 F.2d 450, 453 n. 4 (6th Cir.1986) (per curiam).
 
 
 12
 Two threshold issues must be resolved before applying the substantial evidence standard to the Secretary's decision. First, Adkison asserts she is entitled to an award of benefits dating back to December 1981, the onset date of her alleged disability. However, a finding of disability prior to November 23, 1983, is precluded by the doctrine of res judicata. Wills v. Secretary of Health & Human Services, 802 F.2d 870, 871 n. 2 (6th Cir.1986); Siterlet v. Secretary of Health & Human Services, 823 F.2d 918 (6th Cir.1987) (per curiam). "This Circuit has consistently held that the Secretary may apply the doctrine of res judicata to bar an award of benefits for a period of disability wherein the application for such a period of disability has been previously denied." Wills, 802 F.2d at 871 n. 2. Thus, the doctrine of res judicata required Adkison to show that she was disabled after November 22, 1983, the date of the ALJ's decision denying her first application for disability benefits. Additionally, Adkison had to show that she was disabled prior to March 31, 1984, the date her insured status expired. See Gibson v. Secretary of Health, Education and Welfare, 678 F.2d 653, 654 (6th Cir.1982).
 
 
 13
 The second preliminary issue to address is Adkison's contention that the ALJ should have reopened the decision on her first application. A decision may be reopened if one of the conditions expressed in 20 C.F.R. Sec. 404.988 (1988) exists. However, judicial review of the Secretary's decision not to reopen a claim for disability benefits is precluded, absent a colorable constitutional challenge. Califano v. Sanders, 430 U.S. 99, 107-108 (1977); Wills, 802 F.2d at 873. In this case, the Secretary's denial of the petition to reopen is not challenged on constitutional grounds, and no colorable constitutional claim is present. In the absence of a constitutional challenge, we are precluded from reviewing the ALJ's decision not to reopen the prior decision. Wills, 802 F.2d at 873.
 
 
 14
 The Social Security Act provides that a claimant for disability insurance benefits must establish an
 
 
 15
 (A) Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuance period of not less than 12 months.
 
 
 16
 42 U.S.C. Sec. 423(d)(1)(A) (Supp.1989). The law places upon the claimant the burden of furnishing medical and other evidence demonstrating a physical or mental impairment amounting to a disability. 42 U.S.C. Secs. 423(d)(3), (5)(A) (Supp.1989). To determine if a claimant is disabled, the Secretary undertakes a five-step sequential analysis pursuant to 20 C.F.R. Secs. 404.1520(a)-(f) (1988). If the claimant is found to be disabled or not disabled at any step in the evaluation, the analysis ends immediately. 20 C.F.R. Sec. 404.1520(a) (1988).
 
 
 17
 In this case, the ALJ terminated consideration of Adkison's claim at step four of the sequential analysis. The ALJ determined that during the relevant time period, Adkison had a severe impairment consisting of nonclassical migraine headaches with episodes of status migrainous, which did not meet the Listing of Impairments. 20 C.F.R. Part 404, Subpt. P, App. 1. The ALJ decided that Adkison could not engage in prolonged or arduous physical labor because such activity may exacerbate the symptoms of her headaches. However, the ALJ concluded that Adkison had the residual functional capacity, prior to March 31, 1984, to perform such light and sedentary work as she had performed in her past relevant work as a counter clerk and secretary.
 
 
 18
 A careful review of the record reveals substantial evidence to support the Secretary's decision. Adkison's complaint of disabling pain must be evaluated in terms of the standard announced in Duncan v. Secretary of Health & Human Services, 801 F.2d 847 (6th Cir.1986):
 
 
 19
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 20
 Id. at 853.[1] Applying this test to the present case, Adkison has failed to establish she suffered disabling headache pain during the relevant period. It may be conceded that Adkison submitted objective medical evidence establishing an underlying headache condition. However, the objective evidence neither confirms the severity of the alleged pain nor reveals a medical condition which could reasonably be expected to produce the alleged disabling pain. Dr. Brandt's letter of January 26, 1984, and Dr. Diamond's report of April 10, 1984, report that her headache condition improved during the relevant time period from a condition previously determined not to be disabling. Thus, considering the record as a whole for the relevant period of time, substantial evidence supports the Secretary's decision that Adkison was not disabled between November 23, 1983, and March 31, 1984.
 
 
 21
 Adkison asserts the Secretary's decision is not supported by substantial evidence because the Secretary failed (1) to properly consider her psychiatric impairment; (2) to consider evidence of her narcotic addiction; (3) to consider the side effects of her medications; (4) to give substantial weight to the opinions of her treating physicians; and (5) to obtain the testimony of a vocational expert. Adkison also alleges the district court erred by ignoring the "whole record."
 
 
 22
 Adkison's arguments are without merit. First, the ALJ did assess Adkison's psychiatric condition by filling out a Psychiatric Review Technique Form. The ALJ concluded that her condition prior to March 31, 1984, was of insufficient severity to meet the Listing of Impairments. The only evidence Adkison submitted to support her alleged psychiatric impairment was a medical report from an examination conducted more than three years after expiration of her insured status. The ALJ rejected the report, concluding it was irrelevant because it did not address the issue of her disability during the relevant time period. The ALJ's decision is supported by Siterlet, 823 F.2d at 920, where we held that a report from an examination conducted eight months after expiration of the claimant's insured status was minimally probative of the claimant's condition during the relevant period.
 
 
 23
 Adkison's allegation that the Secretary failed to consider evidence of her narcotic addiction and the effects from her medication also lacks merit. Adkison cites records from November 1984 and April 1985 stating she was addicted to narcotic medications. However, in a letter dated January 26, 1984, Dr. Brandt stated that Adkison was off most of the medications from the Diamond Clinic. There is no evidence in the record establishing Adkison was disabled due to narcotic addiction or side effects from medication during the relevant time period.
 
 
 24
 Adkison's argument for deference to the opinions of treating physicians is misplaced. The medical opinions to which Adkison argues deference is due were rendered after March 31, 1984. The opinions are not based on sufficient medical data from the relevant time period. A treating physician's opinion is accorded substantial deference only if it is based on sufficient medical data. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). Moreover, the ALJ did defer to medical opinions rendered during and shortly after the relevant time period. Dr. Brandt's letter of January 26, 1984, and Dr. Diamond's report of April 10, 1984, both noted improvement in Adkison's headache condition.
 
 
 25
 Adkison's assertion regarding the necessity of vocational testimony evidences an erroneous understanding of the sequential evaluation used by the Secretary to analyze disability claims. In this case, resort to vocational testimony was unnecessary because the ALJ determined at step four of the sequential evaluation that Adkison was not disabled.
 
 
 26
 Finally, Adkison's appeal for consideration of the "whole record" is merely an attempt to avoid the doctrine of res judicata. Res judicata precludes consideration of evidence of record prior to November 22, 1983, the date Adkison's first application was denied. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Similarly, medical evidence regarding Adkison's condition after March 31, 1984, is irrelevant because it is not proof of her condition prior to the expiration of her insured status. Siterlet, 823 F.2d at 920.
 
 III.
 
 27
 Accordingly, for the reasons stated, the summary judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In McCormick v. Secretary of Health & Human Services, 861 F.2d 998, 1003 (6th Cir.1988), the court held that the Duncan test would continue to apply to cases decided after the sunset of the Disability Benefits Reform Act of 1984 because the standards announced in Duncan were authorized by 20 C.F.R. Sec. 404.1529 (1988)